UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE AT NASHVILLE

WYNDHAM VACATION
MANAGEMENT, INC., and
WYNDHAM VACATION
RESORTS, INC.,

       Plaintiffs,

VS.                                        Case No.

PROPERTY RELIEF, LLC,             <u>JURY DEMAND</u>
IA VACATIONS, INC., VP TITLE,
LLC, ROBERT PICKEL,
STACY B. GILLISPIE,
TIMESHARE RELIEF, and
PACIFIC TRANSFERS.

       Defendants.

## COMPLAINT

    Comes now Plaintiffs, Wyndham Vacation Resorts, Inc. and Wyndham Vacation Management, and file this Complaint against Defendants, Property Relief, LLC, IAVacations, Inc., VP Title, LLC, TimeShare Relief, Inc., Pacific Transfers, Robert Pickel and Stacy Gillispie and state as follows:

## NATURE OF CASE

    (1)   This cause of action is predicated upon the theories of Civil RICO, Intentional Interference with Current and Prospective Business Relations, Breach of Contract, Intentional

Interference with Contractual Relations, Procurement of Breach of Contract, violation[s] of the Tennessee Consumer Protection Act and Civil Conspiracy. Defendants are an enterprise committing various acts of mail, wire and financial fraud. The enterprise is meticulously structured to orchestrate the following activities: (1) charge upfront or advanced fees for the sale of timeshare contracts when a legitimate third-party purchaser is not in place at the time fees are charged and collected; (2) fraudulently induce timeshare owners to participate in sham transactions and illegal/fraudulent conveyances; (3) defraud Plaintiffs; and (4) permit Defendants to garner ill-gotten gains from Defendants' scheme going forward.

(2) Defendants induce timeshare owners to purchase Defendants' services under the auspices that Defendants' services will absolve timeshare owners from all legal liability under their existing timeshare contracts. Defendants, however, are fraudulently inducing unsuspecting Wyndham owners to pay Defendants to unknowingly participate in fraudulent conveyances. Defendants charge Wyndham owners to fraudulently convey their contracts, titles or deeds into undercapitalized sham companies, sham individuals or fictitious individuals. These fraudulent conveyances are made with the intent to hinder, delay or defraud creditors such as Plaintiffs. The fraudulent services may be purchased through and facilitated by various companies including TimeShare Relief, IAVacations and/or many other companies operated by the owners of these companies.

(3) Timeshare owners are unaware that they are being charged for fraudulent conveyances that are void and, therefore, do not operate to absolve them of "all" their legal liability. Defendants utilize sham individuals, fictitious individuals or judgment proof sham companies to hold timeshare titles because Defendants have no intention, at any time, to ever pay the contractually obligated fees timeshare owners paid Defendants to assume. Defendants

2

meticulously structured the companies and individuals forming the enterprise to enable Defendants to profit from the timeshare contracts held in sham companies while intentionally defaulting on the assumed payment obligations. Defendants accomplish this by selling vacation packages or timeshare contracts to third-parties from a separately maintained company that on the surface appears unrelated to the sham companies. These profits are in addition to the fees Defendants derive from or charge for the fraudulent conveyances.

## PARTIES

(4) Wyndham Vacation Resorts, Inc. is a Delaware corporation with a principal place of business located at 8427 South Park Circle, Orlando, Florida 32819.

(5) Wyndham Vacation Management, Inc. is a Delaware corporation with a principal place of business located at 8427 South Park Circle, Orlando, Florida 32819.

(6) Property Relief, LLC is a member-managed LLC and is registered with the Tennessee Secretary of State and has a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. The registered agent for Property Relief, LLC is Robert Pickel. Robert Pickel is the registered agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(7) IA Vacations, Inc. is a Tennessee Corporation with a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. The registered agent for IA Vacations, Inc. is Stacy B. Gillispie. Stacy B. Gillispie is the registered agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

3

(8) VP Title, LLC is a member-managed LLC and is registered with the Tennessee Secretary of State and has a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. Robert Pickel is an agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(9) TimeShare Relief is a California Corporation with a principal place of business at 2239 West 190th Street, Torrance, California. David M. Karen is the agent for service of process. Process can be served at 300 Esplande Drive, Suite 1180, Oxnard, California 93036.

(10) Pacific Transfers is a California Company with a principal place of business at 2239 or 2241 West 190th Street, Torrance, California. David M. Karen is the agent for service of process. Process can be served at 300 Esplande Drive, Suite 1180, Oxnard, California 93036.

(11) Robert Pickel is a Tennessee resident of this District and can be served with process at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(12) Stacy B. Gillispie is a Tennessee resident of this District and can be served with process at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718

## JURISDICTION AND VENUE

(13) This cause of action is within the jurisdiction of the Federal District Court pursuant to the provisions of 28 U.S.C. § 1332(a) in that:

(a) Plaintiffs and Defendants are citizens of different states; and

(b) The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

4

(14) Jurisdiction is further predicated upon original jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. Jurisdiction is conferred under 28 U.S.C. § 1331 by virtue of 18 U.S.C. §§ 1961 –1968 & 901(a).

(15) Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the alleged events giving rise to the original claim occurred and continue to occur in this district, the Middle District of Tennessee. Defendants conduct business in this district and/or reside in this district.

## FACTUAL BACKGROUND

(16) Plaintiffs develop, market, sell and manage vacation timeshare ownership interests and provide consumer financing to owners.

(17) Wyndham timeshares provide an alternative for individuals wanting a vacation home, but who cannot afford or justify the expense of buying additional fixed real estate and want the flexibility of traveling to many different vacation destinations.

(18) Wyndham is an innovator in the timeshare industry. Wyndham was one of the first companies to utilize a points-based ownership system providing owners with the flexibility to select personalized vacation criteria such as timing, duration, location and accommodation options.

(19) Wyndham timeshare owners benefit from Wyndham's size, structure and product innovations. Wyndham is the world's largest vacation timeshare company with approximately 1,000,000 owner families worldwide and an extensive and diverse portfolio of resorts.

5

Wyndham provides access to the largest number of vacation ownership resorts and individual vacation ownership units.

(20) Wyndham offers numerous intrinsic values to its clientele. For instance, Wyndham offers its owners the opportunity to vacation at thousands of resorts worldwide through its international exchange affiliations.

(21) Wyndham is supported by approximately 13,300 employees globally. Wyndham has developed or acquired more than 180 vacation ownership resorts throughout the United States, Canada, Mexico, the Caribbean, and the South Pacific representing more than 20,500 individual vacation ownership units.

(22) Wyndham owners purchase timeshare properties or interests through Wyndham and enter into contracts with Wyndham. These individuals or families can then participate in a points system and/or other innovative programs allowing them the benefits of timeshare ownership combined with the ability to travel to numerous resorts and destinations throughout the world.

(23) Wyndham focuses on and emphasizes customer relations. Maintaining good will and good customer relations are vital components to Wyndham's success in the industry and overall business success.

(24) The majority of Wyndham's revenue is derived from repeat business from existing timeshare owners, including Wyndham owners purchasing additional points and/or upgrades and Wyndham owners referring new buyers.

(25) Wyndham focuses significant time and resources on developing and maintaining its owner base and Wyndham emphasizes owner relations and customer service.

(26) Wyndham owners have valid and binding contractual agreements with Wyndham.

6

(27)     Some Wyndham owners own real property at Wyndham timeshare locations. These Wyndham owners have deeds that are filed as part of the services provided by Wyndham. Wyndham owners may also own points reflecting an ownership share of a trust holding deeds to multiple resort properties throughout the world.

(28)     Plaintiffs provide maintenance, upkeep, and other services to Wyndham owners. In exchange, Wyndham owners have contractual obligations to pay yearly maintenance fees. These fees cover a wide array of services provided by Wyndham, various management companies, and applicable owners' associations.

## Property Relief, LLC, IA Vacations, Inc., and VP Title, LLC

(29)     Defendants target timeshare owners including Wyndham timeshare owners.

(30)     Property Relief, LLC is owned, operated or managed by Robert Pickel.

(31)     IA Vacations, Inc., is owned, operated or managed by Stacy Gillespie.

(32)     Property Relief, LLC and IAVacations, LLC utilize Post Office Box addresses, but operate out of the same office space or on the same premises.

(33)     Defendants also operate a transfer or closing company named VP Title, LLC.

(34)     VP Title, LLC has utilized at least two addresses:  1148 Wagner Drive, Suite 104 and 3784 Parkway.

(35)     Stacy Gillispie operates or transacts on eBay under the registered name "redweeks4less."

(36)     Stacy Gillispie operates or transacts on eBay under the registered name "travel_time_vacations."

7

(37) Defendants have transacted under the name "All Time Vacations or alltimevacations."

(38) Defendants have transacted under the name "Vacation Experts International, LLC."

(39) Defendants have transacted under the name "Travel RCI."

(40) Defendants created or have utilized Resort Getaways, LLC as sham or judgment-proof LLC to hold Wyndham titles.

(41) Defendants utilize different company names and different Post Office Box addresses to create an appearance of autonomy between the companies.

(42) Defendants use of multiple business names, LLC names, and fictitious individuals creates consumer confusion and deception.

(43) Defendants further utilize multiple businesses owned by the same individual(s) and operated out of the same office in Torrance, California to create confusion, deception and to accomplish Defendants' overall scheme including: TimeShare Relief, Pacific Transfers, Transfer on the Spot, Donate Timeshares, Resort Owners Association, Resort Notification Department, Resort Members Association, and Right Choice Transfers.

(44) Defendants use of multiple business entities is a necessary component of Defendants overall scheme designed to generate financial profits for the Defendants while defrauding Plaintiffs and wrongfully interfering with Wyndham's business and contractual relations.

(45) Defendants represent to Wyndham owners that Defendants will sell or transfer their Wyndham titles.

(46) Defendants represent to Wyndham owners that the Defendants' services will remove any and all of the owner's legal and contractual responsibilities owed to Plaintiffs.

8

(47)   Defendants offer these transfer services to the general public or to other vacation companies by utilizing a deceptive reverse timeshare sales process that requires the transfer of a Wyndham deed out of a Wyndham owner's name so that the Wyndham owner can then be sold what they already owned, a new timeshare contract, for thousands of additional dollars.

(48)   Defendants utilize Property Relief, LLC to transfer Wyndham deeds into sham companies including, but not limited to C&S Resort Getaways, LLC.

(49)   Defendants utilize judgment proof sham companies because Defendants never have any intention of paying the contractually owed fees and obligations attached to the Wyndham deeds.

(50)   Defendants utilize Property Relief, LLC to transfer Wyndham deeds into fictitious individuals' names or to individuals with no ability or intent to pay the contractually owed fees and obligations attached to the Wyndham deeds.

(51)   Defendants induce Wyndham owners to pay Defendants to unknowingly participate in fraudulent conveyances.

(52)   Defendants induce Wyndham owners to pay advanced or upfront fees to sell Wyndham contracts or deeds.

(53)   Defendants charge advanced or upfront fees to sell timeshare contracts or deeds even though Defendants do not have a legitimate third-party purchaser in place when the advanced fees are charged and collected.

(54)   Defendants induce Wyndham owners to pay Defendants under the auspices that Defendants' services will absolve Wyndham owners from all legal liability, including any obligation to pay fees to Plaintiffs, under their timeshare contracts.

9

(55)  Defendants' services are fraudulent, void, or voidable and do not operate to relieve Wyndham owners of any legal liability under their timeshare contracts.

(56)  Defendants provide these transfer services to other timeshare companies, such as Spinnaker Resorts, LLC, to enable Defendants to fleece Wyndham owners out of thousands of dollars to purchase what the Wyndham owners already owned, a timeshare contract.

(57)  Defendants' scheme results in Wyndham owners being fleeced out of thousands of dollars for another timeshare contract and now having legal liability for two timeshare contracts.

(58)  Defendants know and understand the rights, obligations and duties under the terms of Wyndham contracts.

(59)  Defendants have knowledge of Wyndham owners' contractual obligations to Plaintiffs including the obligation to pay yearly maintenance fees or mortgage payments.

(60)  Defendants have utilized C&S Resort Getaways, LLC to transfer Wyndham deeds or contracts.

(61)  Defendants have transferred Wyndham deeds or contracts into C&S Resort Getaways, LLC.

(62)  C&S Resorts, LLC does not pay the contractual obligations owed to Plaintiffs attached to the Wyndham deeds or under the contracts held by C&S Resorts, LLC.

(63)  Defendants have transferred approximately 140 Wyndham deeds or contracts into the name of Derek Wilcox.

(64)  Derek Wilcox defaults on contractual obligations owed to Plaintiffs related to the Wyndham deeds or contracts held by Derek Wilcox.

(65)  Derek Wilcox has never made any payments to Plaintiffs.

(66)  Defendants have transferred approximately 60 Wyndham deeds or contracts into the name of Alice Walden.

(67)  Alice Walden defaults on contractual obligations owed to Plaintiffs related to the Wyndham deeds or contracts held by Alice Walden.

(68)  Alice Walden has never made any payments to Plaintiffs.

(69)  Defendants have transferred approximately 40 Wyndham titles, deeds or contracts into the name of Brandi Lanier.

(70)  Brandi Lanier defaults on contractual obligations owed to Plaintiffs related to the Wyndham deeds or contracts held by Brandi Lanier.

(71)  Brandi Lanier has never made any payments to Plaintiffs.

(72)  Defendants have transferred approximately 40 Wyndham titles, deeds or contracts into the name of Jacob Walden.

(73)  Jacob Walden defaults on contractual obligations owed to Plaintiffs related to the Wyndham deeds or contracts held by Jacob Walden.

(74)  Jacob Walden has never made any payments to Plaintiffs.

(75)  Defendants utilize the United States Mail, Fed Ex, and/or UPS to send and/or receive forms, documents and titles to and from timeshare owners for their completion/signatures and to accomplish the fraudulent transfer of timeshare contracts, titles or deeds.

(76)  Defendants' use of the United States Mail, Fed Ex, and/or UPS for transmitting documents related to the real estate closing and real estate transfers occurred on or about the dates of transfers from 2010 to present and is continuing in nature.

(77) Defendants communicate via telephone, email, and/or facsimile with timeshare owners regarding the service[s] provided by Defendants. The communications occurred on or about the dates of each transfer between October of 2010 and present.

(78) Defendants utilize the United States Mail, Fed Ex, and/or UPS to send transfer documents and deeds to Wyndham.

(79) Defendants' use of the United States Mail, Fed Ex, and/or UPS to transmit closing documents and deeds to Wyndham occurred on or about the dates of transfers from 2010 to present and is continuing in nature.

(80) Defendants utilize judgment proof sham companies, sham individuals or fictitious individuals to hold Wyndham titles because Defendants never have any intention of paying the contractually obligated fees owed to Plaintiffs.

(81) Defendants' actions deprive Wyndham of the contractual benefits owed to Plaintiffs.

(82) Defendants' actions force Plaintiffs to place liens on the properties fraudulently conveyed and Plaintiffs will ultimately be forced to foreclose on the properties.

(83) Defendants' scheme results in noneconomic damages to Plaintiffs, including, but not limited to, loss of goodwill and damage to reputation, with Wyndham's current and prospective owners and/or the public.

(84) Wyndham owners have been assured by these illegitimate third-parties that their obligations to Plaintiffs have ceased. Defendants, however, have induced Wyndham owners to pay for fraudulent conveyances that are void and/or voidable and that do not eliminate their legal liability. This situation leads to unhappy Wyndham owners, damage to Wyndham's reputation

12

and goodwill, and creates financial harm when the Wyndham owners do not pay the required fees under the terms of their agreements with Plaintiffs.

(85)    Deficiencies for maintenance and association fees resulting from defaults caused by Defendants' fraudulent and deceptive practices may ultimately damage thousands of Wyndham owners that are not in default in the form of higher maintenance fees to offset the deficiencies caused by defaults.

## TimeShare Relief, Inc. and Pacific Transfers

(86)    Defendants' transactions are also facilitated by or through a group of collective companies in Torrance California known as:  TimeShare Relief, Pacific Transfers, Transfer on the Spot, Donate Timeshares, Resort Owners Association, Resort Notification Department, Resort Members Association, and Right Choice Transfers.

(87) Timeshare Relief, known also as Pacific Transfers, facilitates fraudulent transactions or fraudulent conveyances performed by Defendants.

(88)    Timeshare Relief charges Wyndham owners upfront or advanced fees for sale of real estate without having legitimate third-party purchasers in place at the time fees are charged and collected.

(89)    Timeshare Relief refers Wyndham owners to Property Relief, VP Title or Pacific Transfers or other unknown companies for closing services and Property Relief, VP Title or Pacific Transfers then fraudulently conveys the Wyndham deed to sham LLCs, sham purchasers or fictitious individuals.

(90)    TimeShare Relief charges Wyndham owners for timeshare cancellation services.

13

(91) TimeShare Relief utilizes various closing or transfer companies to perform closing or deed transfer services including: VP Title, Pacific Title, and Property Relief.

(92) TimeShare Relief charges and collects fees for fraudulent conveyances and/or facilitates fraudulent conveyances through closing companies or transfer companies including: VP Title, Pacific Title or Property Relief.

(93) TimeShare Relief charges and collects upfront or advanced fees for the transfer or sale of real estate, timeshare deeds or timeshare contracts without having legitimate third-party purchasers in place.

(94) Pacific Transfers charges and collects upfront or advanced fees for the transfer or sale of real estate, timeshare deeds or timeshare contracts without having legitimate third-party purchasers in place.

(95) TimeShare Relief charges and collects fees to facilitate transfer or sale of timeshare deeds or timeshare contracts, but fails to sell the deeds or contracts or transfer the deeds or contracts and permits the deeds or contract to enter into default on debt or mortgage obligations.

(96) TimeShare Relief and its associated transfer or closing companies fraudulently and illegally transfer contracts into or back into Wyndham owners' names without their knowledge, authorization or express consent.

(97) TimeShare Relief charged a Wyndham owner for transfer of eight (8) Wyndham deeds in September of 2011. The owner was initially advised that Property Relief would perform the transfer and later identified Pacific Transfers as the company to perform the transfer. The deeds were not transferred by TimeShare Relief, Property Relief or Pacific Transfers and the deeds are now in default on thousands of dollars in debt obligations owed to Wyndham.

14

(98) TimeShare Relief utilized VP Title to transfer multiple Wyndham deeds on or about January 2013. VP Title placed these deeds in the name of sham or fictitious individuals that are also commonly utilized to hold Wyndham deeds under fraudulent conveyances performed by Property Relief. Fraudulent transfer or real estate closing documentation was submitted to Wyndham to facilitate these transfers. VP Title and/or TimeShare Relief fraudulently transferred several of the deeds back into the name of the original Wyndham owner[s] without their knowledge, express authorization or consent.

## CAUSES OF ACTION

### CLAIM I

### Civil RICO 18 U.S.C. § 1962(c)

(99) Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (98) of this Complaint as if each were set forth separately herein.

(100) Defendants, their agents and/or employees are a group of persons, formal or informal, associated together for the common purpose of engaging in conduct constituting an association-in-fact. The various Defendants/companies function together as a continuing unit.

(101) From on or about 2010 to present, Defendants, all of whom are persons within the meaning of RICO, were employed by or associated with an enterprise whose activities engaged in or affected interstate commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c); including multiple acts of mail fraud, wire fraud, and/or financial fraud.

15

(102)  Defendants' acts are arranged and ordered so as to exhibit both a relationship between the predicate acts and the threat of continuing criminal activity.  Defendants' acts of mail fraud, wire fraud, and financial fraud occurred during the fraudulent inducement of and consummation of sham/illegal transactions between 2010 and present.

(103)  Defendants induced several hundred conveyances of Wyndham titles into various fictitious individuals, sham individuals or sham companies including C&S Resort Getaways, LLC ($ 37,000 + in default), Danny Gillespie (last transfer on January 20, 2011), Alice Walden (approx. 60 deeds), Jacob Walden (approx. 40 deeds), Brandi Lanier (approx. 40 deeds) and Derek Wilcox (approx. 140 deeds).  The transfers and fraudulent conveyances date back to at least January 20, 2011, and continue to occur.

(104)  Upon information and belief, Defendants market their services to other timeshare owners, not just Wyndham owners.

(105)  Defendants utilize wire fraud, mail fraud, and/or financial fraud to accomplish or further their fraudulent scheme.

(106)  Defendants' actions are violations of public policy, violations of state statutes and affect interstate commerce.

(107)  The nature of Defendants' predicate acts, business model and organizational structure involve a distinct threat of long-term racketeering activity and is continuing in nature.

(108)  Defendants have the same or similar purposes, results, participants, victims, methods of commission and are interrelated by distinguishing characteristics, specific hierarchy and meticulous organization.

(109) The acts committed by Defendants are not isolated events, but represent a pattern of deceptive, fraudulent, illegal and predatory practices beginning on or about May of 2010 and are ongoing in nature.

(110) Defendants are associated in such a manner so as to form an ongoing organization, formal or informal, and function as a continuing unit of the RICO enterprise.

(111) The organization's hierarchy is detailed in the Background of this Complaint. The organization functions with Gillispie orchestrating and meticulously structuring multiple companies within the enterprise to accomplish each step or aspect of the fraudulent scheme necessary to accomplish the enterprise's ultimate objectives.

(112) Gillispie created multiple companies, each of which provides an integral role in the enterprise's affairs and racketeering activity. Defendants utilize different Post Office Box addresses and operate under a litany of different names to create an appearance of autonomy between sales companies and individuals and a real estate closing company.

(113) Gillispie creates LLC's or sham companies to hold Wyndham deeds through fraudulent conveyances including, but not limited to, C&S Resort Getaway, LLC, and administratively dissolves these companies when Plaintiffs stop permitting transfers into these companies upon determining that these companies are merely holding companies designed to defraud Plaintiffs as a creditor.

(114) C&S Resort Getaway, LLC, currently holds multiple Wyndham titles under fraudulent multiple member numbers and is in default on contractual obligations owed to Plaintiffs in excess of $ 37,000.

(115) C&S Resort Getaway, LLC, was administratively dissolved on August 9, 2011, but still holds Wyndham titles and is in default on contractual obligations owed to Plaintiffs.

17

(116)   Following dissolution of C&S Resort Getaways, LLC, Gillispie fraudulently conveyed Wyndham titles to other judgment proof sham companies, individuals or fictitious individuals and will continue fraudulent conveyances into these names until the high transfer rates and defaults are discovered by Plaintiffs.  Gillispie will then create new sham companies and individuals to hold Wyndham titles, deeds, or contracts.

(117)   TimeShare Relief charges timeshare for fraudulent conveyances and utilizes various closing or transfer companies to perform closing or deed transfer services including VP Title, Pacific Title, and Property Relief.

(118)   Timeshare Relief, Pacific Transfers and/or other Defendants charge Wyndham owners upfront fees for the transfer or sale of real estate, timeshare deeds or timeshare contracts without having a legitimate third-party purchaser in place.  Defendants fail to sell the deeds or contracts, fail to transfer the deeds or contracts and permit the deeds or contract to default on debt or mortgage obligations.

(119)   TimeShare Relief and its associated transfer companies fraudulently and illegally transfer deeds or contracts back into the original Wyndham owners' name without their express consent, knowledge or authorization.   TimeShare Relief directs or facilitates fraudulent conveyances to sham or fictitious individuals commonly utilized by other Defendants to hold Wyndham deeds and fault on debt obligations owed to Wyndham.

(120)   TimeShare Relief charged a Wyndham owner for transfer of eight Wyndham deeds in September of 2011, but the deeds were not transferred and are now in default.

(121)   TimeShare Relief utilized VP Title to transfer multiple Wyndham deeds on or about January of 2013.  VP Title placed these deeds into the names of sham or fictitious individuals that are also commonly utilized hold Wyndham deeds under fraudulent conveyances

18

performed by Property Relief. Fraudulent transfer or real estate closing documentation was submitted to Wyndham to facilitate these transfers in January 2013, constituting acts of mail fraud.

(122) VP Title and/or TimeShare Relief fraudulently transfer deeds back into the name of the original Wyndham owner[s] without their knowledge, authorization or consent. Submission of transfer or closing documentation to Wyndham to facilitate these transfers constitutes mail fraud.

(123) Defendants' enterprise has an existence that is independent to and/or separate from the pattern of racketeering activity in which it engages. All Defendants have some raison d'etre beyond mere criminality. The association-in-fact enterprise in this case consists of a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

(124) Defendants advertise, represent and warrant that owners of timeshare contracts can legally transfer their contracts and titles to Defendants thereby absolving timeshare owners of any continuing or ongoing legal and/or contractual obligations under timeshare contracts.

(125) Defendants utilize the internet, email, U.S. Mail, Fed Ex, UPS and/or the telephone to communicate with prospective clients regarding the services they offer and to induce timeshare owners into believing that Defendants' transfers are legal and operate to relieve timeshare owners of continued legal/contractual liability.

(126) Defendants fraudulently charge timeshare owners upfront fees for the sale or transfer of real estate even though Defendants do not have a legitimate third-party purchaser in place at the time advanced fees are charged and collected.

19

(127) Defendants utilize the internet, email, U.S. Mail, Fed Ex, UPS and/or the telephone to consummate transactions and collect upfront or advanced fees for the sale or transfer of real estate when legitimate third-party purchasers are not in place. Defendants' actions constitute mail fraud and wire fraud.

(128) Defendants fraudulently deed back timeshares to individuals paying Defendants to sell their timeshare. Defendants utilize U.S. Mail, Fed Ex, and/or UPS to disseminate fraudulently prepared and notarized transfer documentation to Wyndham to accomplish the unauthorized transfer back to the original timeshare owner.

(129) Defendants utilize U.S. Mail, Fed Ex, and/or UPS to disseminate records, to send forms, to send timeshare owners closing statements, and notify Plaintiffs, the resort, resort management or the homeowners' association.

(130) Defendants utilize U.S. Mail, Fed Ex, and/or UPS to transmit fraudulent deeds, fraudulent closing documents and other transfer documents with fraudulent information to accomplish the fraudulent conveyances and fraudulent real estate transactions.

(131) Defendants' acts of transferring Wyndham owners' titles into sham companies, fictitious individual or judgment-proof individuals constitute illegal and fraudulent conveyances.

(132) The fraudulent conveyances are made with the intent to hinder, delay or defraud creditors such as Plaintiffs.

(133) Defendants' transfers are void and/or voidable pursuant to public policy codified under various applicable state statutes, including, but not limited to, Tenn. Code Ann. § 66-3-101.

(134)    Contrary to representations by Defendants to Wyndham owners, Plaintiffs retain the right to foreclose on the properties and to seek past due, current and future fees from the Wyndham timeshare owners who paid Defendants for the fraudulent and/or void conveyances.

(135)    Defendants profit financially from the conspiracy by fraudulently inducing unsuspecting Wyndham owners to pay Defendants to participate in sham transactions and fraudulent conveyances.  Defendants' intent of the carefully orchestrated scheme is to avoid paying Plaintiffs contractually owed fees, while still retaining the ability to profit from the Wyndham contracts being held in the judgment proof shell companies.  Gillispie or Defendants meticulously structured the association-in-fact enterprise, including the intentional undercapitalization of the holding companies or creation of fictitious individuals, to accomplish this scheme.

(136)    At the outset and/or time of the transaction, Defendants had no intention of paying the contractual obligations that timeshare owners paid Defendants to assume.  Defendants' fraudulent intentions are evident by Defendants' use of sham companies to hold Wyndham titles and Defendants' failure to pay assumed contractual obligations.

(137)    Defendants' utilization of undercapitalized judgment proof companies, sham individuals or fictitious individuals to hold real estate deeds and contracts is an action in furtherance of an illegal scheme affecting interstate commerce.  Defendants' actions are to the detriment of Plaintiffs, Wyndham customers induced into participating in the scheme to defraud Plaintiffs and ultimately Wyndham owners not in default who may ultimately bear the burden of higher maintenance fees created by deficiencies resulting from defaults.

(138)    Defendants illegally and fraudulently retain the benefit of these Wyndham contracts by selling vacation packages and timeshare contracts to third-parties from a separately

21

maintained company that on the surface appears legitimate and unrelated to the sham companies holding the Wyndham titles. These rights of use may even be sold back to the timeshare owners utilizing the transfer service thereby permitting the timeshare owners to still vacation at Plaintiffs' resorts without having to pay the required maintenance fees.

(139) Plaintiffs sustain damages as a result of Defendants' refusal to pay Plaintiffs.

(140) Plaintiffs are entitled to damages, treble damages, attorneys' fees and any other relief applicable under 18 U.S.C. § 1962(c).

## CLAIM II

### Civil RICO 18 U.S.C. § 1962(d)

(141) Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (140) of this Complaint as if each were set forth separately herein.

(142) Plaintiffs have been injured by Defendants' conspiracy to violate 18 U.S.C. § 1962(c), and Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(d) irrespective of Defendants' violation of subsection (c).

(143) Defendants acted in concert and conspired to profit financially from defrauding timeshare owners and inducing timeshare owners to participate in illegal and fraudulent conveyances carefully orchestrated and designed to hinder, delay, and defraud Wyndham of its contractual rights.

(144) Defendants set up multiple undercapitalized sham companies or created fictitious individuals to hold Wyndham titles with the specific intent of never honoring the contractual

22

obligations to pay any creditors for the titles. Undercapitalized sham companies, sham individuals or fictitious individuals were utilized to create judgment proof entities should creditors such as Plaintiffs seek recourse for nonpayment.

(145) A civil conspiracy between the various Defendants was a vital and integral aspect to accomplishing the Defendants' unlawful purposes.

(146) The complexity of the organizational structure, capitalization of the various companies and the method of transaction clearly reflects that each Defendant had a common purpose supported by a concerted action to defraud. Each Defendant had the intent to defraud, that intent was common to each Defendant and each Defendant had the understanding that the other[s] had the intent to defraud.

(147) Plaintiffs are entitled to damages, treble damages, attorneys' fees and any other relief applicable under 18 U.S.C. § 1962(d).

## CLAIM III

### Intentional Interference with Current and Prospective Business Relations

(148) Plaintiffs adopt, reiterate, re-allege and incorporate by reference each and every allegation set forth in paragraphs (1) through (147) as though fully set forth herein.

(149) Wyndham has current and prospective business relationships with third-parties, Wyndham owners and prospective Wyndham owners. Wyndham expends considerable time and resources developing and cultivating current and prospective business relationships with third-parties. Defendants have actual and/or constructive knowledge of these relationships, expectancies, and opportunities.

23

(150)   Defendants had actual and/or constructive knowledge of these relationships, expectancies, and opportunities.   Defendants have specific knowledge of Wyndham's business relations and prospective business relations.

(151)  Defendants intended to cause the breach or termination of the business relationship Plaintiffs had with Wyndham Owners.  Defendants intended to and did deny Plaintiffs of their contractual rights.

(152)   Defendants use fraudulent, deceptive unfair and/or illegal business practices to induce Wyndham owners to pay Defendant upfront or advanced fees for the sale of Wyndham deeds and contracts even though Defendants do not have a legitimate third-party purchaser in place at the time fees are charged and collected.

(153)  Defendants use fraudulent, deceptive unfair and/or illegal business practices to induce Wyndham owners to pay for debt cancellation services that essentially do nothing more than cause Wyndham owners to participate in fraudulent conveyances or place owners in default of their legally owed contractual obligations to Plaintiffs.

(154)  Defendants had an improper motive and/or improper means for intending to cause the breach or termination of business relationships between Wyndham owners and the Plaintiffs. Defendants' predominate purpose was/is to defraud Wyndham owners and interfere with Plaintiffs' business relationships for purposes of Defendants' financial gain

(155)  Defendants' methods of improper interference with Plaintiffs' business relationships include, but are not limited to, fraud and deceit for purposes of financial gain and use of fraudulent conveyances pursuant to Tenn.CodeAnn. § 66-3-101.  Defendants committed various acts of mail fraud, wire fraud and financial fraud to accomplish the Defendants and/or the enterprise's purpose.

24

(156) Defendants acted willfully in persuading or attempting to persuade Wyndham owners to cease business with Wyndham. These actions constitute intentional and wrongful interference with existing business and the actions impact potential future business. A large aspect of Wyndham's timeshare business emanates from existing owners expanding their ownership and referring third-parties to Wyndham. Defendants' conduct and actions deprive Wyndham of these valid and existing business opportunities.

(157) Defendants' interference with Plaintiffs' business is willful and malicious.

(158) Defendants' interference involves deceit, fraud, undue influence, misuse of inside information, breach of fiduciary relationships, overreaching conduct, and constitutes unfair competition.

(159) Plaintiffs have suffered damages and significant harm as a direct and proximate result of Defendants' tortious interference with the business relations between Wyndham owners and Plaintiffs.

(160) Plaintiffs are entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

(161) Plaintiffs are entitled to punitive damages.

## CLAIM IV

### Intentional Interference with Contractual Relations

(162) Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (161) of this Complaint as if each were set forth separately herein.

(163) Wyndham has valid and binding contracts with third parties, Wyndham owners.

(164) Defendants have knowledge of these contracts.

(165) Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

(166) Defendants utilize fraudulent conveyances to intentionally interfere with the contracts between Wyndham and Wyndham owners.

(167) Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of this intentional interference.

(168) Defendants acted intentionally, willfully, and maliciously by interfering with the Wyndham owners' contracts.

(169) Defendants' actions are a direct and proximate cause of significant harm to Plaintiffs.

(170) Plaintiffs are entitled to an award for damages.

(171) Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(172) Plaintiffs are entitled to an award for punitive damages.


## CLAIM VI

### Procurement of Breach of Contract

### TENN. CODE ANN. § 47-50-109

26

(173)  Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (172) of this Complaint as if each were set forth separately herein.

(174)  Wyndham has valid and binding contracts with third parties, Wyndham owners.

(175)  Defendants had knowledge of these contracts.

(176)  Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

(177)  Defendants utilize fraudulent conveyances to intentionally interfere with the contracts between Wyndham and Wyndham owners.

(178)  Defendants used inducement, persuasion, misrepresentation, or other means, to induce or procure the breach of violation, refusal, or failure to perform Wyndham owners' lawful contracts.

(179)  Defendants engaged in fraudulent and deceptive conduct, as outlined above, with others, with the intent to interfere with the contracts between Wyndham and Wyndham owners.

(180)  Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of Defendants' procurement.

(181)  Defendants' actions are the direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(182)  Plaintiffs are entitled to an award for damages against Defendants.

(183)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(184)  Plaintiffs are entitled to punitive damages.

(185)  Plaintiffs are entitled to treble damages under the statute.

27

**Violation of the Tennessee Consumer Protection Act**

TENN. CODE ANN. § 47-18-101, *et seq.*

(186)  Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (185) of this Complaint as if each were set forth separately herein.

(187)  Defendants' acts constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

(188)  Defendants' advice that Wyndham Owners should transfer their property into sham companies is a deceptive practice.  Wyndham Owners are deceived into believing their contractual obligations to Plaintiffs have been legally absolved and this deception leads Wyndham Owners to breach their contracts with Plaintiffs to the detriment of both Plaintiffs and the Wyndham Owners.

(189)  Defendants' actions and/or omissions constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

(190)  Defendants acted in a concerted effort to take the actions which violated the Tennessee Consumer Protection Act.

(191)  Defendants' actions resulted in an ascertainable loss of money and things of value.

(192)  Defendants acted willfully and maliciously in violating the Tennessee Consumer Protection Act.

(193)   Defendants' actions are a direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(194)   Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(195)   Plaintiffs are entitled to treble damages under the statute.

(196)   Plaintiffs are entitled to reasonable attorneys' fees under the statute.


## CLAIM VIII

## Civil Conspiracy


(197)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (196) of this Complaint as if each were set forth separately herein.

(198)   In attempting to have Wyndham Owners breach their contracts and/or transfer their property interest into sham companies, Defendants have a common design and purpose of interfering with Plaintiffs' business relations and inducing Plaintiffs' customers to breach their contractual agreements.

(199)   Defendants have acted in concert with an unlawful purpose, and with unlawful means, to interfere with Plaintiffs' business relations and to induce Plaintiffs' customers to breach their contractual agreements.

(200)   Defendants committed or engaged in overt acts in furtherance of their unlawful conspiracy to interfere with Plaintiffs' business relations or to induce Plaintiffs' customers to breach their contractual agreements.

(201) Plaintiffs have sustained damages as a direct and proximate result of Defendants' unlawful conspiracy. These damages include loss of profits and damage to and loss of Wyndham's goodwill.

(202) Defendants' actions are a direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(203) Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(204) Defendants acted willfully and with malice in taking these actions.

(205) Plaintiffs are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

1.    Compensatory damages against Defendants in an amount to be determined at trial, but not less than $100,000;

2.    Damages related to the loss of goodwill and the substantial harm Wyndham experiences to its reputation among Wyndham owners that is caused by Defendants' actions, deceptive practices, and interference with Plaintiffs' business;

3.    Compensation for Plaintiffs' loss of future profits and future business opportunities as the majority of Wyndham's timeshare revenue is attributable to repeat business, referrals and upgrades by existing Wyndham owners;

30

4.      Costs, losses, and fees related to the substantial resources needed to address Defendants' willful and malicious actions and related efforts to mitigate damage to Plaintiffs' business resulting from Defendants' actions;

5.      Punitive and exemplary damages against Defendants in an amount to be determined at trial;

6.      Disgorgement of ill-gotten gains or profits;

7.      An award of treble damages against Defendants;

8.      An award of reasonable attorneys' fees, costs and expenses to Plaintiffs;

9.      That this Court issue, after a hearing, a temporary restraining order and a preliminary injunction, and after trial a permanent injunction restraining and enjoining Defendants or its agents and/or employees from:

   a.      Contacting any Wyndham owner in regard to Wyndham's business relationship with that Wyndham owner;

   b.      Attempting to delete, modify, alter, or otherwise destroying, intentionally, inadvertently, or automatically, any potentially discoverable and/or relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., iPhones, Blackberries, or similar devices), personal computers, or any other devices capable of storing electronic information; and

   c.      Transferring deeds to sham LLCs, sham individual or fictitious individuals or fraudulently conveying Wyndham titles.

10.      An award of pre- and post- judgment interest on any award of damages to the fullest extent allowed by law.

11.      A trial by jury on all claims contained in this COMPLAINT.

Such other and further relief, both legal and equitable as may be proper.

31

Respectfully submitted,

KING & BALLOW

By: _____
R. Eddie Wayland BPR 6045
R. Douglas Hanson, II BPR 17387
Andrew W. Coffman BPR 27160
rew@kingballow.com
dhanson@kingballow.com
acoffman@kingballow.com

1100 Union Street Plaza
315 Union Street
Suite 1100
Nashville, Tennessee 37201
Tel: (615) 259-3456
Fax: (615) 726-5417

Attorneys for Wyndham Vacation Resorts, Inc. &
Wyndham Vacation Management

32