## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

WYNDHAM VACATION
MANAGEMENT, INC., and
WYNDHAM VACATION
RESORTS, INC.,

        **Plaintiffs,**

VS.

PROPERTY RELIEF, LLC,
IA VACATIONS, INC., VP TITLE,
LLC, C& S RESORT GETAWAY,
LLC, ROBERT PICKEL,
STACY B. GILLISPIE,
AJC RESORT SERVICES,
TIMESHARE RELIEF,
PACIFIC TRANSFERS, and
DAVID MACMILLAN.

        **Defendants.**

Case No.: 3:13-cv-434

Judge Haynes

**JURY DEMAND**

---

## FISRT AMENDED COMPLAINT

---

Come now Plaintiffs, Wyndham Vacation Resorts, Inc. and Wyndham Vacation Management, and file this First Amended Complaint against Defendants, Property Relief, LLC, IAVacations, Inc., VP Title, LLC, C&S Resort Getaway, LLC, AJC Resort Services, TimeShare Relief, Inc., Pacific Transfers, Robert Pickel, Stacy Gillispie, and David MacMillan, and state as follows:

### NATURE OF CASE

(1) This cause of action is predicated upon Civil RICO, Fraud, Intentional Interference with Current and Prospective Business Relations, Breach of Contract, Intentional Interference

with Contractual Relations, Procurement of Breach of Contract, violation[s] of the Tennessee Consumer Protection Act and Civil Conspiracy.

(2)  Defendants are an enterprise of multiple LLCs owned and operated by the same individuals and utilized to commit various acts of mail, wire and financial fraud.  The enterprise is meticulously structured to orchestrate the following activities:  (1)  charge upfront or advanced fees for the sale of real estate deeds when a legitimate third-party purchaser is not in place; (2) fraudulently induce timeshare owners to pay for fraudulent transfers or fraudulent conveyances; (3)  defraud Wyndham; (4)  defraud consumers; and (5)  permit Defendants to garner ill-gotten gains on an ongoing basis.

(3)  Defendants operate multiple fraudulent schemes to defraud timeshare owners and Wyndham.  Defendants use a litany of different LLCs owned, operated and managed by the same individuals.  The schemes or scams include unsolicited telephone calls and unsolicited mailers to timeshare owners advising timeshare owners that a buyer is in place to purchase their timeshares.

(4)  Defendants utilize multiple LLCs to charge upfront fees for the sale of real estate. The California Defendants utilize AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association or Resort Members' Association to mail unsolicited "Final Notices" to timeshare owners.  These mailers fraudulently state "Final Expiration Notice" to eliminate maintenance fees "Your eligibility will expire on [_/_/]13."

(5)  The mailers are designed to initiate a scheme of inducing individuals to pay upfront fees for the sale of real estate or to attend presentations at hotels throughout the country.  The hotel presentations are used to induce timeshare owners to pay upfront fees to Defendants to sell their property or to unknowingly pay Defendants for fraudulent transfers and fraudulent

2

conveyances. Defendants then utilize one of their many other affiliate companies to perform fraudulent transfers or fraudulent conveyances including, but not limited to: Pacific Transfers, Transfer on the Spot, Donate Title, Property Relief, VP Titles, Right Choice Transfers or C&S Resort Getaway.

(6) Charging upfront fees for the sale of timeshare deeds has been prosecuted in multiple states. Defendants' acts of mailing unsolicited "Final Expirations Notices" to induce payment of upfront fees for sale of real estate constitute mail fraud. Fees or commissions may only be collected after a sale of real estate. TimeShare Relief was sanctioned by the Vermont Attorney General for soliciting consumers through deceptive bait and switch tactics. Consumers were induced by unsolicited mailers to meet with TimeShare Relief and induced to "pay several hundred to several thousand dollars to transfer ownership of their timeshares."

(7) Defendants fraudulently charge upfront fees, but never transfer deeds out of the owners' names. The deeds remain in the original owners name and the original owners unknowingly default, believing their timeshares to have been transferred or sold.

(8) Defendants utilize the US Mail to facilitate and accomplish their schemes. Timeshare owners complete paperwork, execute power of attorneys and mail the documents requested by Defendants to facilitate the fraud. Defendants submit fraudulently prepared warranty deeds and closing documents to Wyndham through the US Mail to accomplish fraudulent transfers. The warranty deeds and transfer documents contain fraudulent representations upon which Wyndham relies, thereby inducing Wyndham to complete the fraudulent transfers. Wyndham is then harmed and defrauded as a creditor.

(9) Defendants utilize multiple companies to orchestrate a bait and switch and reverse sales process. Timeshare owners are induced to pay Defendants upfront fees for transfers and to

3

then pay Defendants thousands of dollars to repurchase what they already owned. Pacific Transfers provided a deed back, escrow and closing service to VO Group. VO Group's owner and multiple employees were indicted for wire or mail fraud. Property Relief and IAVacations are listed on Wesley Financial Group's contracts as performing the same deed back services for Wesley. Wesley is owned and operated by Chuck McDowell, a former manager of VO Group, and Wesley uses the same or a similar business model as VO Group that resulted in the wire and mail fraud indictments.

(10) Property Relief and VP Title fraudulently submitted to Wyndham, by US Mail, at least (82) warranty deeds and closing documents transferring Wyndham deeds back to the original owners' names without the original owners' consent or knowledge and after the original owners paid TimeShare Relief, Pacific Transfers, Property Relief, IAVacations or VP Title to sell their deeds. These are fraudulent real estate transfers, made without knowledge or consent of the purchaser, initiated and facilitated by mailing fraudulent closing documents to Wyndham by Property Relief and VP Title. Property Relief and VP Title's acts constitute wire fraud or mail fraud and are predicate acts to the RICO claim.

(11) Defendants induce timeshare owners to pay upfront or advanced fees under the auspices that Defendants' services will absolve timeshare owners from all legal liability. This is false. Some deeds are never transferred out of the owners' names or Defendants fraudulently convey the deeds. Both scenarios result in a default to Wyndham and are designed to defraud Wyndham as a creditor. Timeshare owners are unaware that they are paying for fraudulent conveyances that are void and do not absolve them of their legal liability. Defendants utilize sham or fictitious purchasers that have no intention, at any time, to ever pay the contractually obligated fees attached to the Wyndham deeds. The damage to Wyndham has already been done

4

and the accounts are typically already in default when the fraudulent transfers or fraudulent conveyances are ultimately discovered.

## PARTIES

(12) Wyndham Vacation Resorts, Inc. is a Delaware corporation with a principal place of business located at 8427 South Park Circle, Orlando, Florida 32819.

(13) Wyndham Vacation Management, Inc. is a Delaware corporation with a principal place of business located at 8427 South Park Circle, Orlando, Florida 32819.

(14) Property Relief, LLC is a member-managed LLC and is registered with the Tennessee Secretary of State and has a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. The registered agent for Property Relief, LLC is Robert Pickel. Robert Pickel is the registered agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(15) IA Vacations, Inc. is a Tennessee Corporation with a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. The registered agent for IA Vacations, Inc. is Stacy B. Gillispie. Stacy B. Gillispie is the registered agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(16) VP Title, LLC is a member-managed LLC and is registered with the Tennessee Secretary of State and has a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. Robert Pickel is an agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(17) C&S Resort Getaway, LLC, is a Tennessee limited liability company with a principal place of business at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718. Stacy B.

5

Gillispie is the registered agent for service of process and process can be served at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(18) TimeShare Relief is a California corporation with a principal place of business at 2239 West 190th Street, Torrance, California. David M. Karen is the agent for service of process and process can be served at 300 Esplande Drive, Suite 1180, Oxnard, California 93036.

(19) Pacific Transfers is a California company with a principal place of business at 2239 or 2241 West 190th Street, Torrance, California. David M. Karen is the agent for service of process and can be served at 300 Esplande Drive, Suite 1180, Oxnard, California 93036.

(20) AJC Resort Services is owned and operated by David MacMillan and is an unregistered company. Process can be served on David M. Karen at 300 Esplande Drive, Suite 1180, Oxnard, California 93036 or can be served on David MacMillan at 201 Spindrift Drive, Rancho Palos Verdes, California.

(21) Robert Pickel is a Tennessee resident and can be served with process at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718.

(22) Stacy B. Gillispie is a Tennessee resident and can be served with process at 1148 Wagner Drive, Sevierville, Tennessee 37862-3718

(23) David MacMillan is a California resident and can be served with process at 201 Spindrift Drive, Rancho Palos Verdes, California.


## JURISDICTION AND VENUE

(24) This cause of action is within the jurisdiction of the Federal District Court pursuant to the provisions of 28 U.S.C. § 1332(a) in that:

    (a) Plaintiffs and Defendants are citizens of different states; and

(b) The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

(25) Jurisdiction is further predicated upon original jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. Jurisdiction is conferred under 28 U.S.C. § 1331 by virtue of 18 U.S.C. §§ 1961 –1968 & 901(a).

(26) Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) in that a substantial part of the alleged events giving rise to the original claim occurred and continue to occur in this district, the Middle District of Tennessee.

(27) Defendants conduct business in this district and/or reside in this district. AJC Resort Services has an office address in Franklin, Tennessee, and is owned, operated or managed by David MacMillan who also owns Defendants, Pacific Transfers and TimeShare Relief.

(28) TimeShare Relief, Pacific Transfer, Property Relief and VP Title conducted business with, charged upfront or advanced fees for the sale of estate and performed multiple fraudulent transfers for (21) deeds owned by Wyndham owners residing in LaVergne, Tennessee.

(29) Defendants actions relate to at least eleven (11) deeds attached to Wyndham's Nashville location and at least twenty-seven (27) deeds attached to Wyndham Fairfield Glade located in Crossville, Tennessee. Both are Wyndham properties located within this District.


**FACTUAL BACKGROUND**

(30) Plaintiffs develop, market, sell and manage vacation timeshare ownership interests and provide consumer financing to owners.

7

(31)   Wyndham timeshares provide an alternative for individuals wanting a vacation home, but who cannot afford or justify the expense of buying additional fixed real estate and want the flexibility of traveling to many different vacation destinations.

(32)   Wyndham is an innovator in the timeshare industry.  Wyndham was one of the first companies to utilize a points-based ownership system providing owners with the flexibility to select personalized vacation criteria such as timing, duration, location and accommodation options.

(33)   Wyndham timeshare owners benefit from Wyndham's size, structure and product innovations.  Wyndham is the world's largest vacation timeshare company with approximately 1,000,000 owner families worldwide and an extensive and diverse portfolio of resorts. Wyndham provides access to the largest number of vacation ownership resorts and individual vacation ownership units.

(34)   Wyndham offers numerous intrinsic values to its clientele.   For instance, Wyndham offers its owners the opportunity to vacation at thousands of resorts worldwide through its international exchange affiliations.

(35)   Wyndham is supported by approximately 13,300 employees globally.  Wyndham has developed or acquired more than 180 vacation ownership resorts throughout the United States, Canada, Mexico, the Caribbean, and the South Pacific representing more than 20,500 individual vacation ownership units.

(36)   Wyndham owners purchase timeshare properties or interests through Wyndham and enter into contracts with Wyndham.  These individuals or families can then participate in a points system and/or other innovative programs allowing them the benefits of timeshare

ownership combined with the ability to travel to numerous resorts and destinations throughout the world.

(37)    Wyndham focuses on and emphasizes customer relations.  Maintaining good will and good customer relations are vital components to Wyndham's success in the industry and overall business success.

(38)    The majority of Wyndham's revenue is derived from repeat business from existing timeshare owners, including Wyndham owners purchasing additional points and/or upgrades and Wyndham owners referring new buyers.

(39)    Wyndham focuses significant time and resources on developing and maintaining its owner base and Wyndham emphasizes owner relations and customer service.

(40)    Wyndham owners have valid and binding contractual agreements with Wyndham.

(41)    Some Wyndham owners own real property at Wyndham timeshare locations. These Wyndham owners have deeds that are filed as part of the services provided by Wyndham. Wyndham owners may also own points reflecting an ownership share of a trust holding deeds to multiple resort properties throughout the world.

(42)    Plaintiffs provide maintenance, upkeep, and other services to Wyndham owners. In exchange, Wyndham owners have contractual obligations to pay yearly maintenance fees. These fees cover a wide array of services provided by Wyndham, various management companies, and applicable owners' associations.


**Property Relief, LLC, IAVacations, Inc., VP Title, LLC, Robert Pickel and Stacey Gillispie**

(43)    Property Relief, LLC is owned, operated or managed by Robert Pickel.

(44)    IA Vacations, Inc., is owned, operated or managed by Stacy Gillespie.

9

(45)   Property Relief, LLC and IAVacations, LLC utilize different Post Office Box addresses, but operate out of the same office space or on the same premises.

(46)   Gillispie and Pickle also operate a transfer or closing company named VP Title, LLC, utilizing at least two (2) addresses.

(47)   Stacy Gillispie operates or transacts on eBay under the registered name "redweeks4less."

(48)   Stacy Gillispie operates or transacts on eBay under the registered name "travel_time_vacations."

(49)   Gillispie and Pickle have transacted under the name "All Time Vacations or alltimevacations."

(50)   Gillispie and Pickle have transacted under the name "Vacation Experts International, LLC."

(51)  Gillispie and Pickle have transacted under the name "Travel RCI."

(52)  Gillispie and Pickle created and all Defendants have utilized C&S Resort Getaway, LLC as sham or judgment-proof LLC to hold Wyndham titles or to transfer Wyndham Titles.

(53)  Gillispie and Pickle utilize different company names and different Post Office Box addresses to create an appearance of autonomy between the companies.

(54)   Gillispie and Pickle's use of multiple business names, LLC names, and fictitious individuals creates consumer confusion and deception.

(55)   Gillispie and Pickle further utilize multiple businesses operated out of the same office in Torrance, California, (owned by David MacMillan) to create confusion, deception and to accomplish Defendants' overall scheme.  These businesses include: TimeShare Relief, Pacific Transfers, Transfer on the Spot, Donate Timeshares, AJC Resort Services, Resort Management

Association, Resort Owners Association, Resort Notification Department, Resort Members Association, and Right Choice Transfers.

(56) Gillispie, Pickle and MacMillan's use of multiple business entities is a necessary component of their overall scheme designed to generate financial profits for all Defendants while defrauding consumers, defrauding Plaintiffs and wrongfully interfering with Wyndham's business and contractual relations.

(57) Gillispie, Pickle and MacMillan utilize various and multiple LLCs to charge upfront fees for the sale of real estate. These businesses include: IAVacations, Property relief, TimeShare Relief, Donate Timeshares, AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association or Resort Members' Association.

(58) Gillispie, Pickle and MacMillan utilize AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association or Resort Members' Association to mail unsolicited "Final Notices" to timeshare owners. These mailers fraudulently state "Final Expiration Notice" to eliminate maintenance fees "Your eligibility will expire on [_/_/]13."

(59) Gillispie, Pickle and MacMillan use unsolicited mailers to initiate a scheme of inducing individuals to pay upfront fees for sale of real estate or to attend presentations at hotels across the United States. Businesses used to disseminate the unsolicited mass mailers include: AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association or Resort Members' Association.

(60) Gillispie, Pickle and MacMillan use the hotel presentations to induce Wyndham owners to pay upfront fees to Defendants to sell their property or to unknowingly pay Defendants for fraudulent transfers and fraudulent conveyances. Gillispie, Pickle and

MacMillan then utilize one of their many other affiliate companies to perform fraudulent transfers or fraudulent conveyances including, but not limited to: Pacific Transfers, Transfer on the Spot, Donate Title, Property Relief, VP Titles, Right Choice Transfers or C&S Resort Getaway.

(61) Gillispie and Pickle induce and fraudulently deceive Wyndham owners into paying upfront fees for the sale of or rental of their Wyndham contracts. Fees or commissions, however, may only be charged after the sale of a timeshare deed and not before. Such actions have given rise to mail or wire fraud indictments in multiple states.

(62) All Defendants offer these transfer services to the general public or to other vacation companies by utilizing a deceptive reverse timeshare sales process that requires the transfer of a Wyndham deed out of a Wyndham owner's name so that the Wyndham owner can then be sold what they already owned, a new timeshare contract, for thousands of additional dollars.

(63) All Defendants utilize Property Relief to transfer Wyndham deeds into sham companies including, but not limited to, C&S Resort Getaway.

(64) Judgment-proof sham companies are utilized to hold Wyndham deeds because Defendants never have any intention of paying the contractual fees and obligations attached to the Wyndham deeds.

(65) All Defendants utilize Property Relief to transfer Wyndham deeds into fictitious individuals' names or to individuals with no ability or intent to pay the contractually owed fees and obligations attached to the Wyndham deeds.

(66) All Defendants and their affiliated companies induce Wyndham owners to pay Defendants to unknowingly participate in fraudulent conveyances.

12

(67)  All Defendants and their affiliated companies induce Wyndham owners to pay advanced or upfront fees to sell Wyndham contracts or deeds.

(68)  All Defendants and their affiliated companies charge advanced or upfront fees to sell timeshare deeds even though Defendants do not have a legitimate third-party purchaser in place when the advanced fees are charged and collected.

(69)  All Defendants and their affiliated companies induce Wyndham owners to pay Defendants under the auspices that Defendants' services will absolve Wyndham owners from all legal liability, including any obligation to pay fees to Plaintiffs, under their timeshare contracts.

(70)  Defendants' services are fraudulent, void, or voidable and do not operate to relieve Wyndham owners of any legal liability under their timeshare contracts, but damage to Wyndham is irreparable when Defendants' fraud is typically discovered.  The accounts may already be in default or in repossession.  The costs to undo fraudulent conveyances, re-title, resell, perform repossessions, perform foreclosures, or issue deeds in lieu are damages sustained by Wyndham.

(71)  All Defendants and their affiliated companies or LLCs provide these transfer services to other timeshare companies, such as Spinnaker Resorts, LLC, to enable Defendants to fleece Wyndham owners out of thousands of dollars to purchase what the Wyndham owners already owned, a timeshare contract.

(72)  Defendants' scheme results in Wyndham owners being fleeced out of thousands of dollars for another timeshare contract or having legal liability for two timeshare contracts.

(73)  All Defendants and their affiliated companies know and understand the rights, obligations and duties under the terms of Wyndham contracts.

13

(74)   All Defendants and their affiliated companies have knowledge of Wyndham owners' contractual obligations including the obligation to pay maintenance fees or mortgage payments.

(75)   Gillispie and Pickle have utilized C&S Resort Getaway to transfer or hold Wyndham deeds.

(76)   C&S Resort Getaway does not comply with contractual obligations attached to the Wyndham deeds held by C&S Resort Getaway.

(77)   C&S Resort Getaway has multiple fraudulent Wyndham Member Numbers, seven (7) of which currently have default balances of $37,038.16.   Two (2) additional Member Numbers were subject to repossessions or foreclosures.   Three  (3) additional Member Numbers for C&S Resort Getaway are active but delinquent.

(78)   Gillispie and Pickle used C&S Resort Getaway to transfer deeds into sham or fictitious purchasers and to place deeds into the names of Gillispie's elderly father and mother.

(79)   Gillispie and Pickle administratively dissolved C&S Resort Getaway once the deeds held by C&S Resort Getaway were in default status and flagged by Wyndham.

(80)  C&S Resort Getaway was last used as a **purchaser** on December 6, 2012.

(81)  C&S Resort Getaway was last used as a **seller** on August 30, 2011.

(82)   All Defendants and their affiliated companies have transferred approximately 140 Wyndham deeds into the name of Derek Wilcox.

(83)  Derek Wilcox defaults on contractual obligations owed to Plaintiffs.

(84)  Derek Wilcox has never made any payments to Plaintiffs.

(85)   All Defendants and their affiliated companies have transferred approximately 60 Wyndham deeds into the name of Alice Walden.

14

(86)  Alice Walden defaults on contractual obligations owed to Plaintiffs.

(87)  Alice Walden has never made any payments to Plaintiffs.

(88)  All Defendants and their affiliated companies have transferred approximately 40 Wyndham deeds into the name of Brandi Lanier.

(89)  Brandi Lanier defaults on contractual obligations owed to Plaintiffs.

(90)  Brandi Lanier has never made any payments to Plaintiffs.

(91)  All Defendants and their affiliated companies have transferred approximately 40 Wyndham deeds into the name of Jacob Walden.

(92)  Jacob Walden defaults on contractual obligations owed to Plaintiffs.

(93)  Jacob Walden has never made any payments to Plaintiffs.


**TimeShare Relief, Inc., Pacific Transfers, AJC Resort Services and David MacMillan**

(94)  Defendants' transactions, including the Tennessee Defendants, are initiated and facilitated by or through a group of collective companies in Torrance, California, owned by David MacMillan.  MacMillan's companies include:  TimeShare Relief, Pacific Transfers, Transfer on the Spot, Donate Timeshares, AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association, Resort Members' Association, Resort Notification Department, and Right Choice Transfers.

(95)  Timeshare Relief and Donate Timeshares initiate and facilitate fraudulent transactions or fraudulent conveyances performed by Pacific Transfers, Transfer on the Spot, Right Choice Transfers, Property Relief, C&S Resort Getaway or VP Title.

(96)  The following companies owned and operated by David MacMillan induce Wyndham owners to pay illegal and fraudulent upfront or advanced fees for sale of real estate

without having legitimate third-party purchasers in place: Timeshare Relief, Donate Timeshares, AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association, Resort Members' Association, and Resort Notification Department.

(97)   Multiple states have indicted companies for charging upfront fees for sale of timeshare deeds. Fees or commissions for sale of deed may only be collected after a sale.

(98)   Timeshare Relief and Donate Timeshares refer Wyndham owners to Property Relief, VP Title, Right Choice Transfer, Transfer on the Spot or Pacific Transfers for closing services. These companies then fraudulently convey Wyndham deeds into sham LLCs, sham purchasers or fictitious individuals. In some instances, money for the sale is collected, but a transfer never occurs. Defendants have also fraudulently transferred at least 82 Wyndham deeds back to the original Wyndham owners without their knowledge or consent.

(99)   Pacific Transfers charges and collects upfront fees for the transfer or sale of timeshare deeds without having legitimate third-party purchasers in place.

(100)  TimeShare Relief and Donate Timeshares charges and collects fees to facilitate the sale of timeshare deeds, but fails to sell the deeds and permits the deeds to default while still in the original Wyndham owner's name.

(101)   MacMillan owns and operates AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association and Resort Members' Association. He utilizes these companies to mail unsolicited "Final Notices" to timeshare owners. These mailers fraudulently state "Final Expiration Notice" to eliminate maintenance fees "Your eligibility will expire on [_/_/]13." The unsolicited mailers are designed to initiate a scheme of inducing individuals to pay upfront fees for sale of real estate or to attend presentations at hotels throughout the country. The hotel presentations are used to induce

16

timeshare owners to pay upfront fees to Defendants to sell their property or to unknowingly pay Defendants for fraudulent transfers and fraudulent conveyances. Defendants then utilize one of their many other affiliate companies to perform the fraudulent transfers or fraudulent conveyances including, but not limited to: Pacific Transfers, Transfer on the Spot, Donate Title, Property Relief, VP Titles, Right Choice Transfers or C&S Resort Getaway.

(102) TimeShare Relief charged a Wyndham owner for transfer of eight (8) Wyndham deeds in September of 2011 to be handled by Pacific Transfer. The deeds were not transferred. TimeShare relief sent the files to the Tennessee Defendants to be handled by Property Relief and VP Title. The deeds were not transferred and the deeds are now in default on thousands of dollars in debt obligations owed to Wyndham.

(103) TimeShare Relief utilized Tennessee Defendant, VP Title, to transfer multiple Wyndham deeds on April 6, 2012, September 18, 2012, and October 11, 2012. VP Title placed the deeds into the name of a sham or fictitious individual used by Property Relief to hold Wyndham deeds after fraudulent conveyances. On February 22, 2013 and February 25, 2013, VP Title fraudulently transferred the deeds back into the name of the original Wyndham owner without his knowledge or consent. Submission of the fraudulent and unauthorized warranty deeds and closing documents to Wyndham via the United States Mail on February 22, 2013, and again on February 25, 2013, to fraudulently transfer these deeds back into the name of the Wyndham owner without his knowledge or consent constitutes mail fraud.


**Defendants Collectively**

(104) Actions by all Defendants and their affiliated companies deprive Plaintiffs of the contractual benefits owed to Plaintiffs.

(105)  All Defendants and their affiliated companies utilize or facilitate the use of judgment-proof sham companies, sham individuals or fictitious individuals to hold Wyndham deeds because Defendants have no intention of paying the contractual fees owed to Plaintiffs.

(106)  Defendants' actions force Plaintiffs to place liens on properties fraudulently conveyed and Plaintiffs will ultimately be forced to foreclose or incur costs to repossess the properties.

(107)  Defendants' scheme results in noneconomic damages to Plaintiffs, including, but not limited to, loss of goodwill with Wyndham's current and prospective owners.  The majority of Wyndham's business is Wyndham's current owners making additional purchases.

(108)  Wyndham owners have been assured by these illegitimate third parties that their obligations to Plaintiffs have ceased.  Defendants, however, have induced Wyndham owners to pay for fraudulent transactions or fraudulent conveyances that are void and that do not eliminate their legal liability.  This situation leads to unhappy Wyndham owners, damage to Wyndham's goodwill, and creates financial harm when the Wyndham owners do not pay the required fees under the terms of their agreements with Plaintiffs.

(109)  Deficiencies for maintenance and association fees resulting from defaults caused by Defendants' fraudulent and deceptive practices may ultimately damage thousands of Wyndham owners that are not in default in the form of higher maintenance fees to offset the deficiencies caused by defaults.

(110)  The actions of Defendants and their affiliated companies are continuing in nature and continue to harm Plaintiffs.


**CAUSES OF ACTION**

## CLAIM I

## Civil RICO 18 U.S.C. § 1962(c)

(111)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (110) of this Complaint as if each were set forth separately herein.

(112)   Defendants, their agents and/or employees are a group of persons, formal or informal, associated together for the common purpose of engaging in conduct constituting an association-in-fact.  The various Defendants/companies function together as a continuing unit.

(113)   From on or about 2010 to present, Defendants, all of whom are persons within the meaning of RICO, were employed by or associated with an enterprise whose activities engaged in or affected interstate commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c); including multiple acts of mail fraud, wire fraud, and/or financial fraud.

(114)   Defendants' acts are arranged and ordered so as to exhibit both a relationship between the predicate acts and the threat of continuing criminal activity.  Defendants' acts of mail fraud, wire fraud, and financial fraud occurred during Defendants' acts of or facilitation of: (1) fraudulently inducing timeshare owners to pay upfront fees for sale of timeshare deeds that never take place; (2)  fraudulently inducing consumers or timeshare owners to pay illegal upfront fees for the sale of timeshare deeds; (3)  fraudulently inducing timeshare owners to pay for and unknowingly participate in fraudulent real estate transactions or fraudulent conveyances; (4) fraudulently inducing Wyndham to accept fraudulent real estate transfers; and (5)  utilizing mass unsolicited mailers that have been deemed deceptive by the Attorney General of Vermont.

These acts of mail fraud, wire fraud and financial fraud have been occurring since at least 2010, are occurring on a daily basis, are ongoing in nature and impact or effect interstate commerce.

(115)  Defendants induced several hundred Wyndham owners to pay for fraudulent transfers and fraudulent conveyances and initiated and facilitated these transfers through acts constituting wire fraud, mail fraud, and/or financial fraud.  Acts of wire fraud, mail fraud, and/or financial fraud were necessary to accomplish or further the fraudulent scheme and criminal enterprise.

(116)  Defendants' actions are violations of public policy, violations of state statutes and affect interstate commerce.  The nature of Defendants' predicate acts, business model and organizational structure involve a distinct threat of long-term racketeering activity and is continuing in nature.

(117)  Defendants have the same or similar purposes, results, participants, victims, methods of commission and are interrelated by distinguishing characteristics, specific hierarchy and meticulous organization.

(118)  The acts committed by Defendants are not isolated events, but represent a pattern of deceptive, fraudulent, illegal and predatory practices beginning on or about May of 2010 and are ongoing in nature.

(119)  Defendants are associated in such a manner so as to form an ongoing organization, formal or informal, and function as a continuing unit of the RICO enterprise.

(120)  The organization's hierarchy is detailed in the Background of this Complaint.  The organization functions with David MacMillan orchestrating and meticulously structuring multiple companies within the enterprise to accomplish each step or aspect of the fraudulent scheme necessary to accomplish the enterprise's ultimate objectives.

20

(121)  Gillispie and MacMillan created multiple companies and LLCs, each of which provides an integral role in the enterprise's affairs and racketeering activity.  Defendants utilize different Post Office Box addresses and operate under a litany of different names to create an appearance of autonomy between sales companies, transfer companies, escrow companies, closing companies and companies using cold calls or unsolicited communications to initiate the fraudulent scheme.

(122)  Gillispie creates LLC's or sham companies to hold Wyndham deeds through fraudulent conveyances including, but not limited to, C&S Resort Getaway and administratively dissolves these companies when Wyndham "flags" the companies as fraudulent and attempts to collect on defaulted payment obligations.  These sham companies or sham individuals are holding companies designed to defraud Plaintiffs as creditors.

(123)  All Defendants and their affiliated companies or LLCs communicate via telephone, email, and/or facsimile with timeshare owners regarding the services provided by Defendants.  The communications occurred on or about the dates of each transfer between October of 2010 and present and occur on a daily basis.

(124)  The California companies owned and operated by MacMillan have large calls centers set up to initiate, facilitate and accomplish the fraudulent scheme and further the objectives of the criminal enterprise.  Such acts constitute wire fraud and are occurring on a daily basis.

(125)  Gillispie, Pickel, MacMillan, VP Title, C&S Resort Getaway, Pacific Transfers and Property Relief utilize the United States Mail, Fed Ex, and/or UPS to submit warranty deeds with fraudulent information, such as sham purchasers, fictitious purchasers, purchasers with no knowledge of the transfers, fraudulent contact information or misrepresented consideration, to

21

Wyndham title department. Wyndham relies upon the misrepresentations and Wyndham is induced to permit or authorize the fraudulent transfer or fraudulent conveyance based on Defendants' actions and misrepresentations.

(126) In September of 2011, a Wyndham mega-owner or mega-renter was approached by Donate TimeShare (owned by MacMillan) and induced to pay upfront fees for the sale of twenty-one (21) Wyndham deeds. He signed and mailed paperwork on or about September 20, 2011, as requested by Defendants via the US Mail to initiate and facilitate the transactions. No transfer occurred despite the Wyndham owner paying upfront fees. His account was later transferred to Defendant, TimeShare Relief (also owned by MacMillan). The twenty-one (21) deed were purportedly submitted to Defendant, Pacific Transfers, (owned by MacMillan) to close on the sales of the deeds. Additional documentation was signed, executed and submitted through the US Mail to allegedly facilitate the closings.

(127) Pacific Transfers failed to sell the twenty-one (21) deeds. The Wyndham owner complained when he discovered the accounts still in his name that were in default. Approximately one (1) year later, TimeShare Relief transferred his files to Defendant Property Relief (in Tennessee) for the sale of his deeds. Property Relief is owned by Defendant Gillispie. The Wyndham owner submitted additional paperwork to Property Relief through the US Mail as requested by TimeShare Relief and Property Relief.

(128) Another year elapsed and at least eight (8) of the Wyndham owner's deeds were still in his name. Defendants transferred the files back to Pacific Transfers in California and several months later the deeds were sent back to Tennessee to be handled by Defendant, VP Title (Owned by Gillispie).

(129)   VP Title placed some of the owner's deeds into a sham individual commonly utilized by all Defendants.  VP Title, however, without explanation or authorization, transferred the deeds back into the original Wyndham owner's name.  VP Title fraudulently executed closing documents transferring the Wyndham deeds back into the name of the original Wyndham owner and submitted these fraudulent and unauthorized closing documents to Wyndham title. The fraudulently prepared warranty deeds and closing documents related to this series of transactions were submitted by VP Title to Wyndham via US Mail on:

> (1)  March 19, 2012, for contract # 199915786, transferred to Derek Wilcox;

> (2)  April 6, 2012 for, contract # 400100277, transferred to Alice Walden;

> (3)  February 25, 2103, for contract # 400100277 (unauthorized fraudulent transfer from Alice Walden back into Wyndham owner's name facilitated by fraudulently prepared closing documents);

> (4)  September 18, 2012, for contract # 289002958, transferred to Alice Walden;

> (5)  February 25, 2013, for contract # 289002958 (unauthorized fraudulent transfer from Alice Walden back into Wyndham owner's name facilitated by fraudulently prepared closing documents);

> (6)  October 11, 2012, contract # 50610757, transferred to Alice Walden; and

> (7)  February 22, 2013, contract # 50610757 (unauthorized fraudulent transfer from Alice Walden back into Wyndham owner's name facilitated by fraudulently prepared closing documents).

Multiple deeds remained in this Wyndham owner's name despite him having paid Donate Timeshare, TimeShare Relief or MacMillan for the transfers in 2011 and not withstanding that his deeds or files were sent back and forth between the California closing company owned by

MacMillan (Pacific Transfers) and two (2) of the Tennessee transfer companies owned by Gillispie (Property Relief and VP Title).

(130)   On or about April 4, 2013, an unsolicited scam letter was sent by US Mail to a National Harbor Wyndham Owner, (Initials Theodore O.).  Upon information and belief, these are mass mailers sent unsolicited to thousands of individuals throughout the United States.

(131)   The unsolicited mailer was sent by AJC Resort Services (owned by David MacMillan) to notify the Wyndham owner, Theodore O., of his "Final Expiration Notice" for "Maintenance Fee Elimination."   The AJC mailer provided that the owner's eligibility to eliminate maintenance fees will expire on 4/10/13.

(132)   On or about May 25, 2103, an unsolicited scam letter was sent by US Mail to a Wyndham Owner, (Initials Lori S.).  The unsolicited mailer was sent by AJC Resort Services (owned by David MacMillan) to notify the Wyndham owner of their "Final Expiration Notice" for "Maintenance Fee Elimination."   The AJC mailer provided that the owner's eligibility to eliminate maintenance fees will expire on 6/5/13.

(133)   The information in the AJC mailers is deceptive, false and fraudulent.  The mailers are designed to induce Wyndham owners to pay upfront fees for the sale of Wyndham deeds even though a legitimate third-party purchaser is not in place.

(134)   Defendants also utilize these unsolicited mass mailers to have owners call one of their large call centers.  The call center attempts to obtain commitments for upfront fees or attempts induce Wyndham owners to attend seminars at hotels throughout the country in an effort to defraud and fleece the consumers out of thousands of dollars and to defraud Wyndham as a creditor.

(135)  MacMillan's company, TimeShare Relief, was sanctioned by the Attorney General of the State of Vermont for such deceptive practices.  MacMillan now utilizes the following companies, as opposed to TimeShare Relief, to perpetrate the unsolicited mailer scam:  AJC Resort Services, Resort Management Association, Resort Notification Services, Resort Owners' Association or Resort Members' Association.

(136)  Defendants utilize one (1) of their many transfer companies if the AJC mailer is successful at inducing a Wyndham owner to pay upfront fees for the sale of the deed, to pay upfront fees for a fraudulent transfer or to pay for a fraudulent conveyance.  The known transfer companies utilized to perform this aspect of the mass mailer scam are:  Pacific Transfers or Transfer on the Spot owned by MacMillan and Property Relief, C&S Resort Getaway and VP Title owned by Gillespie.

(137)  All Defendants and their affiliated LLCs and companies have facilitated and initiated fraudulent real estate transfers wherein fraudulent warranty deeds and closing documents are submitted to Wyndham through the US Mail, FedEx, or UPS to induce Wyndham to complete fraudulent transfers or approve fraudulent conveyances.  Wyndham relies upon the accuracy of the information submitted to its title department and is induced by Defendants' misrepresentations or omissions into believing that the transfers are good faith and arm's-length transfers to legitimate third-party purchasers.

(138)  All Defendants and their affiliated companies have transferred or facilitated the transfer of approximately (60) Wyndham deeds to the name of Alice Walden.  These fraudulent conveyances are initiated, facilitated and accomplished by submission of fraudulent real estate closing documents reflecting a sham purchaser without knowledge of the transaction.  A small sample of the fraudulent closing documents related to Alice Walden and submitted by Property

Relief to Wyndham through the US Mail on: July 4, 2012, for contract # 580140416; July 4, 2012, for contract # 28771513; July 30, 2012, for contract # 1090300401.

(139) Property Relief inexplicably re-deeded (9) deeds from Alice Walden back into the original Wyndham owner's name after the original Wyndham owner had paid Defendants to sell their deeds.

(140) Property Relief fraudulently submitted to Wyndham, by US Mail, at least (9) warranty deeds and closing documents transferring Wyndham deeds from Alice Walden back to the original owners' names without the original owners' consent and after the original owners paid TimeShare Relief, Pacific Transfers, Property Relief, IAVacations or VP Title to sell their deeds. These are fraudulent real estate transfers, made without knowledge or consent of the purchaser, initiated and facilitated through submission of fraudulent closing documents to Wyndham by Property Relief. Property Relief's acts constitute wire fraud or mail fraud and are predicate acts to the RICO claim.

(141) All Defendants and their affiliated companies have transferred or facilitated the transfer of approximately (40) Wyndham deeds to the name of Brandi Lanier. These fraudulent conveyances are initiated, facilitated and accomplished by submission of fraudulent real estate closing documents reflecting a sham purchaser without knowledge of the transaction. A small sample of the fraudulent closing documents related to Brandi Lanier and submitted by Property Relief to Wyndham through the US Mail occurred on: October 10, 2012, for contract # 50503432; August 8, 2012, for contract # 59604157; August 9, 2012, for contract # 200316073; October 3, 2012, for contract # 209913805; April 6, 2012, for contract # 280211889; June 26, 2012, for contract # 370341265; May 22, 2012, for contract # 26920035; March 3, 2012, for

contract # 1061009114.    This is a sample of the (40) fraudulent transfers involving Alice Walden.

(142)  Property Relief inexplicably re-deeded (7) deeds from Brandi Lanier back into the original Wyndham owner's name after the original Wyndham owner had paid Defendants to sell their deeds.

(143)  Property Relief fraudulently submitted to Wyndham, by US Mail, at least (7) warranty deeds and closing documents transferring Wyndham deeds from Brandi Lanier back to the original owners' names without the original owners' consent and after the original owners paid TimeShare Relief, Pacific Transfers, Property Relief, IAVacations or VP Title to sell their deeds.  These are fraudulent real estate transfers, made without knowledge or consent of the purchaser, initiated and facilitated through submission of fraudulent closing documents to Wyndham by Property Relief.  Property Relief's acts constitute wire fraud or mail fraud and are predicate acts to the RICO claim.

(144)  All Defendants and their affiliated companies have transferred or facilitated the transfer of approximately (140) Wyndham deeds to the name of Derek Wilcox.  These fraudulent conveyances are initiated, facilitated and accomplished by submission of fraudulent real estate closing documents reflecting a sham purchaser without knowledge of the transaction.  A small sample of the fraudulent closing documents related to Derek Wilcox and submitted by Property Relief to Wyndham through the US Mail occurred on August 8, 2012 for contract # 1077602563. This is a sample of the (140) fraudulent transfers involving Derek Wilcox.

(145)  All Defendants and their affiliated companies have inexplicably redeeded (58) deeds from Derek Wilcox back into the original Wyndham owner's name after the original Wyndham owner had paid Defendants to sell their deeds.

27

(146)  Property Relief fraudulently submitted to Wyndham, by US Mail, at least (58) warranty deeds and closing documents transferring Wyndham deeds from Derek Wilcox back to the original owners' names without the original owners' consent and after the original owners paid TimeShare Relief, Pacific Transfers, Property Relief, IAVacations or VP Title to sell their deeds.  These are fraudulent real estate transfers, made without knowledge or consent of the purchaser, initiated and facilitated through submission of fraudulent closing documents to Wyndham by Property Relief.  Property Relief's acts constitute wire fraud or mail fraud and are predicate acts to the RICO claim.

(147)  All Defendants and their affiliated companies have transferred or facilitated the transfer of approximately (40) Wyndham deeds to the name of Jacob Walden.  These are fraudulent conveyances facilitated by submission of fraudulent real estate closing documents reflecting a sham purchaser without knowledge of the transaction.

(148)  All Defendants and their affiliated companies have inexplicably redeeded (5) deeds from Jacob Walden back into the original Wyndham owner's name after the original Wyndham owner had paid Defendants to sell their Deeds.

(149)  Property Relief fraudulently submitted to Wyndham, by US Mail, at least (5) warranty deeds and closing documents transferring Wyndham deeds from Jacob Walden back to the original owners' names without the original owners' consent and after the original owners paid TimeShare Relief, Pacific Transfers, Property Relief, IAVacations or VP Title to sell their deeds.  These are fraudulent real estate transfers, made without knowledge or consent of the purchaser, initiated and facilitated through submission of fraudulent closing documents to Wyndham by Property Relief.  Property Relief's acts constitute wire fraud or mail fraud and are predicate acts to the RICO claim.

28

(150)    In addition to the Property Relief conveyances outlined in the preceding paragraphs, Defendants have utilized VP Title to submit warranty deeds and real estate closing documents to Wyndham through the US Mail for (87) deed transfers during the course of the last three (3) months, March 2013, through June 6, 2013.  VP Title places these deeds into the names of sham or fictitious individuals that are also commonly utilized to hold Wyndham deeds under fraudulent conveyances performed by Property Relief.

(151)  C&S Resort Getaways holds multiple Wyndham titles under fraudulent multiple member numbers and is in default on contractual obligations owed to Plaintiffs in excess of $ 37,000.

(152)    C&S Resort Getaway was administratively dissolved on August 9, 2011, when Wyndham flagged its account and began repossessing deeds held under the multiple fraudulent members numbers possessed by C&S Resort Getways.

(153)  Following dissolution of C&S Resort Getaways, Gillispie fraudulently conveyed Wyndham titles to other judgment proof sham companies, sham individuals or fictitious individuals.  Gillespie will continue fraudulent conveyances into these sham or fictitious names until the high transfer rates and defaults are discovered by Plaintiffs.  Gillispie will then create new sham companies and individuals to hold Wyndham deeds.

(154)    TimeShare Relief charges timeshare owners for fraudulent conveyances and utilizes various closing companies to perform deed transfer services including VP Title, Pacific Title, Right Choice Transfers and Property Relief.

(155)  Timeshare Relief and Pacific Transfers charge Wyndham owners upfront fees for the sale of their deeds, fail to transfer the deeds and permit the deeds to slip into default.

(156) TimeShare Relief and its associated transfer companies fraudulently and illegally transfer deeds or contracts back into the original Wyndham owners' name without their express consent, knowledge or authorization. TimeShare Relief directs or facilitates fraudulent conveyances to sham or fictitious individuals commonly utilized by other Defendants to hold Wyndham deeds resulting in defaults on debt obligations owed to Wyndham.

(157) Defendants' enterprise has an existence that is independent to and/or separate from the pattern of racketeering activity in which it engages. All Defendants have some raison d'etre beyond mere criminality. The association-in-fact enterprise in this case consists of a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

(158) Defendants utilize the Internet, email, U.S. Mail, Fed Ex, UPS and/or the telephone to communicate with prospective clients regarding the services they offer and to induce timeshare owners into believing that Defendants' transfers are legal and operate to relieve timeshare owners of continued legal/contractual liability.

(159) Defendants utilize the Internet, email, U.S. Mail, Fed Ex, UPS and/or the telephone to consummate transactions and collect upfront or advanced fees for the sale or transfer of real estate when legitimate third-party purchasers are not in place. Defendants' actions constitute mail fraud and wire fraud.

(160) Defendants utilize the United States Mail, Fed Ex, and/or UPS to send and/or receive forms, documents, power of attorneys and titles to and from timeshare owners for their completion/signatures and to facilitate and accomplish the fraudulent transfer of timeshare contracts, titles or deeds

(161)    Defendants utilize U.S. Mail, Fed Ex, and/or UPS to disseminate records, to send forms, to send timeshare owners closing statements, and notify Plaintiffs, the resort, resort management or the homeowners' association.

(162)    Defendants utilize U.S. Mail, Fed Ex, and/or UPS to transmit fraudulent deeds, fraudulent closing documents and other transfer documents with fraudulent information to accomplish the fraudulent conveyances and fraudulent real estate transactions.

(163)    Defendants' utilization of undercapitalized judgment proof companies, sham individuals or fictitious individuals to hold real estate deeds and contracts is an action in furtherance of an illegal scheme affecting interstate commerce.  Defendants' actions are to the detriment of Plaintiffs, Wyndham customers induced into participating in the scheme to defraud Plaintiffs and ultimately Wyndham owners not in default who may ultimately bear the burden of higher maintenance fees created by deficiencies resulting from defaults.

(164)    Plaintiffs sustain damages as a result of Defendants' actions and or omissions.

(165)    Plaintiffs are entitled to damages, treble damages, attorneys' fees and any other relief applicable under 18 U.S.C. § 1962(c).

## CLAIM II

## Civil RICO 18 U.S.C. § 1962(d)

(166)    Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (165) of this Complaint as if each were set forth separately herein.

31

(167)   Plaintiffs have been injured by Defendants' conspiracy to violate 18 U.S.C. § 1962(c), and Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(d) irrespective of Defendants' violation of subsection (c).

(168)   Defendants acted in concert and conspired to profit financially from defrauding timeshare owners and inducing timeshare owners to participate in illegal and fraudulent conveyances carefully orchestrated and designed to hinder, delay, and defraud Wyndham of its contractual rights.

(169)   Defendants set up multiple undercapitalized sham companies or created fictitious individuals to hold Wyndham titles with the specific intent of never honoring the contractual obligations to pay any creditors for the titles.   Undercapitalized sham companies, sham individuals or fictitious individuals were utilized to create judgment proof entities should creditors such as Plaintiffs seek recourse for nonpayment.

(170)   A civil conspiracy between the various Defendants was a vital and integral aspect to accomplishing the Defendants' unlawful purposes.

(171)   The complexity of the organizational structure, capitalization of the various companies and the method of transaction clearly reflects that each Defendant had a common purpose supported by a concerted action to defraud.  Each Defendant had the intent to defraud, that intent was common to each Defendant and each Defendant had the understanding that the other[s] had the intent to defraud.

(172)   Plaintiffs are entitled to damages, treble damages, attorneys' fees and any other relief applicable under 18 U.S.C. § 1962(d).

## CLAIM III

### Fraud

(173) Wyndham adopts, reiterates, incorporates by reference and re-alleges each and every allegation contained in ¶¶ (1) through (172) of this Complaint as if each were set forth separately herein.

(174) Defendants have intentionally misrepresented material facts on warranty deeds submitted to Wyndham in the following manners: (1) by asserting that consideration was paid for the transfer of the deed, when no consideration was paid; (2) by asserting that purchasers had agreed to and consented to transfer when the purchaser identified in the closing documents neither had knowledge of the transfer nor consented to the transfer; (3) by submitting deeds with false names or sham purchasers; and (4) by intentionally manipulating Wyndham's customer number system in order to avoid detection.

(175) Defendants misrepresentations were to facts in existence at the time the misrepresentations were made.

(176) Defendants' misrepresentations were made with knowledge of their falsity and with a fraudulent intent. That is Defendants purposefully made these misrepresentations in order to defraud Wyndham and gain an undue advantage over Wyndham.

(177) Wyndham reasonably relied on these misrepresentations.

(178) Defendants' misrepresentations caused or induced Wyndham to accept warranty deeds which were fraudulent and to transfer title of the deeds or points at issue to parties who had no intention to pay the contractual obligation associated with those transfers or, in approximately (82) instances had no knowledge of and never consented to the transfers.

33

(179) Defendants' conduct in this regard is the direct and proximate cause of financial damage to Wyndham.

(180) Wyndham is entitled to damages against Defendants, jointly and severally, in an amount to be determined at trial.

(181) Wyndham is entitled to its reasonable costs and attorney's fees.

(182) Wyndham is entitled to punitive damages.


## CLAIM IV

### Intentional Interference with Current and Prospective Business Relations

(183) Plaintiffs adopt, reiterate, re-allege and incorporate by reference each and every allegation set forth in paragraphs (1) through (182) as though fully set forth herein.

(184) Wyndham has current and prospective business relationships with third-parties, Wyndham owners and prospective Wyndham owners. Wyndham expends considerable time and resources developing and cultivating current and prospective business relationships with third-parties. Defendants have actual and/or constructive knowledge of these relationships, expectancies, and opportunities.

(185) Defendants had actual and/or constructive knowledge of these relationships, expectancies, and opportunities. Defendants have specific knowledge of Wyndham's business relations and prospective business relations.

(186) Defendants intended to cause the breach or termination of the business relationship Plaintiffs had with Wyndham Owners. Defendants intended to and did deny Plaintiffs of their contractual rights.

34

(187)  Defendants use fraudulent, deceptive unfair and/or illegal business practices to induce Wyndham owners to pay Defendant upfront or advanced fees for the sale of Wyndham deeds and contracts even though Defendants do not have a legitimate third-party purchaser in place at the time fees are charged and collected.

(188)  Defendants use fraudulent, deceptive unfair and/or illegal business practices to induce Wyndham owners to pay for debt cancellation services that essentially do nothing more than cause Wyndham owners to participate in fraudulent conveyances or place owners in default of their legally owed contractual obligations to Plaintiffs.

(189)  Defendants had an improper motive and/or improper means for intending to cause the breach or termination of business relationships between Wyndham owners and the Plaintiffs. Defendants' predominate purpose was/is to defraud Wyndham owners and interfere with Plaintiffs' business relationships for purposes of Defendants' financial gain

(190)  Defendants' methods of improper interference with Plaintiffs' business relationships include, but are not limited to, fraud and deceit for purposes of financial gain and use of fraudulent conveyances pursuant to TENN. CODE ANN. § 66-3-101.  Defendants committed various acts of mail fraud, wire fraud and financial fraud to accomplish the Defendants and/or the enterprise's purpose.

(191)  Defendants acted willfully in persuading or attempting to persuade Wyndham owners to cease business with Wyndham.  These actions constitute intentional and wrongful interference with existing business and the actions impact potential future business.  A large aspect of Wyndham's timeshare business emanates from existing owners expanding their ownership and referring third-parties to Wyndham.  Defendants' conduct and actions deprive Wyndham of these valid and existing business opportunities.

35

(192)  Defendants' interference with Plaintiffs' business is willful and malicious.

(193)  Defendants' interference involves deceit, fraud, undue influence, misuse of inside information, breach of fiduciary relationships, overreaching conduct, and constitutes unfair competition.

(194)  Plaintiffs have suffered damages and significant harm as a direct and proximate result of Defendants' tortious interference with the business relations between Wyndham owners and Plaintiffs.

(195)  Plaintiffs are entitled to damages against all Defendants, jointly and severally, in an amount to be determined at trial.

(196)  Plaintiffs are entitled to punitive damages.


## CLAIM V

### **Intentional Interference with Contractual Relations**

(197)  Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (196) of this Complaint as if each were set forth separately herein.

(198)  Wyndham has valid and binding contracts with third parties, Wyndham owners.

(199)  Defendants have knowledge of these contracts.

(200)  Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

(201)  Defendants utilize fraudulent conveyances to intentionally interfere with the contracts between Wyndham and Wyndham owners.

36

(202)  Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of this intentional interference.

(203)  Defendants acted intentionally, willfully, and maliciously by interfering with the Wyndham owners' contracts.

(204)  Defendants' actions are a direct and proximate cause of significant harm to Plaintiffs.

(205)  Plaintiffs are entitled to an award for damages.

(206)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(207)  Plaintiffs are entitled to an award for punitive damages.

## CLAIM VII

## Procurement of Breach of Contract

### TENN. CODE ANN. § 47-50-109

(208)  Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (207) of this Complaint as if each were set forth separately herein.

(209)  Wyndham has valid and binding contracts with third parties, Wyndham owners.

(210)  Defendants had knowledge of these contracts.

(211)  Defendants conspired with the intent to have Wyndham owners violate the terms of their contracts.

(212)  Defendants utilize fraudulent conveyances to intentionally interfere with the contracts between Wyndham and Wyndham owners.

37

(213)  Defendants used inducement, persuasion, misrepresentation, or other means, to induce or procure the breach of violation, refusal, or failure to perform Wyndham owners' lawful contracts.

(214)  Defendants engaged in fraudulent and deceptive conduct, as outlined above, with others, with the intent to interfere with the contracts between Wyndham and Wyndham owners.

(215)  Wyndham owners were induced to breach and did breach their contracts as a direct and proximate result of Defendants' procurement.

(216)  Defendants' actions are the direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(217)  Plaintiffs are entitled to an award for damages against Defendants.

(218)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(219)  Plaintiffs are entitled to punitive damages.

(220)  Plaintiffs are entitled to treble damages under the statute.


### CLAIM VIII

### Violation of the Tennessee Consumer Protection Act

### TENN. CODE ANN. § 47-18-101, *et seq.*

(221)  Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (220) of this Complaint as if each were set forth separately herein.

(222)  Defendants' acts constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

38

(223)  Defendants' advice that Wyndham owners should transfer their property into sham companies is a deceptive practice.  Wyndham owners are deceived into believing their contractual obligations to Plaintiffs have been legally absolved and this deception leads Wyndham owners to breach their contracts with Plaintiffs to the detriment of both Plaintiffs and the Wyndham owners.

(224)  Defendants' actions and/or omissions constitute unfair and/or deceptive practices in violation of the Tennessee Consumer Protection Act.

(225)  Defendants acted in a concerted effort to take the actions which violated the Tennessee Consumer Protection Act.

(226)  Defendants' actions resulted in an ascertainable loss of money and things of value.

(227)  Defendants acted willfully and maliciously in violating the Tennessee Consumer Protection Act.

(228)  Defendants' actions are a direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(229)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(230)  Plaintiffs are entitled to treble damages under the statute.

(231)  Plaintiffs are entitled to reasonable attorneys' fees under the statute.


## CLAIM VIII

### Civil Conspiracy

(232)   Plaintiffs adopt, reiterate, incorporate by reference and re-allege each and every allegation contained in ¶¶ (1) through (231) of this Complaint as if each were set forth separately herein.

(233)  In attempting to have Wyndham owners breach their contracts and/or transfer their property interest into sham companies, Defendants have a common design and purpose of interfering with Plaintiffs' business relations and inducing Plaintiffs' customers to breach their contractual agreements.

(234)  Defendants have acted in concert with an unlawful purpose, and with unlawful means, to interfere with Plaintiffs' business relations and to induce Plaintiffs' customers to breach their contractual agreements.

(235)  Defendants committed or engaged in overt acts in furtherance of their unlawful conspiracy to interfere with Plaintiffs' business relations or to induce Plaintiffs' customers to breach their contractual agreements.

(236)  Plaintiffs have sustained damages as a direct and proximate result of Defendants' unlawful conspiracy.   These damages include loss of profits and damage to and loss of Wyndham's goodwill.

(237)   Defendants' actions are a direct and proximate cause and cause in fact of significant harm to Plaintiffs.

(238)  Defendants are jointly and severally liable to Plaintiffs for damages in an amount to be determined at trial.

(239)  Defendants acted willfully and with malice in taking these actions.

(240)  Plaintiffs are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY FOR THE FOLLOWING RELIEF:

1.     Compensatory damages against Defendants in an amount to be determined at trial, but not less than $100,000;

2.     Damages related to the loss of goodwill and the substantial harm Wyndham experiences to its reputation among Wyndham owners that is caused by Defendants' actions, deceptive practices, and interference with Plaintiffs' business;

3.     Compensation for Plaintiffs' loss of future profits and future business opportunities as the majority of Wyndham's timeshare revenue is attributable to repeat business, referrals and upgrades by existing Wyndham owners;

4.     Costs, losses, and fees related to the substantial resources needed to address Defendants' willful and malicious actions and related efforts to mitigate damage to Plaintiffs' business resulting from Defendants' actions;

5.     Punitive and exemplary damages against Defendants in an amount to be determined at trial;

6.     Disgorgement of ill-gotten gains or profits;

7.     An award of treble damages against Defendants;

8.     An award of reasonable attorneys' fees, costs and expenses to Plaintiffs;

9.     That this Court issue, after a hearing, a temporary restraining order and a preliminary injunction, and after trial a permanent injunction restraining and enjoining Defendants or its agents and/or employees from:

41

a.      Contacting any Wyndham owner in regard to Wyndham's business relationship with that Wyndham owner;

b.      Attempting to delete, modify, alter, or otherwise destroying, intentionally, inadvertently, or automatically, any potentially discoverable and/or relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., iPhones, Blackberries, or similar devices), personal computers, or any other devices capable of storing electronic information; and

c.      Transferring deeds to sham LLCs, sham individual or fictitious individuals or fraudulently conveying Wyndham titles.

10.     An award of pre- and post- judgment interest on any award of damages to the

fullest extent allowed by law.

11.     A trial by jury on all claims contained in this COMPLAINT.


Such other and further relief, both legal and equitable as may be proper.


                                Respectfully submitted,

                                KING & BALLOW

                                By:  /s/R. Douglas Hanson
                                R. Eddie Wayland BPR 6045
                                R. Douglas Hanson, II BPR 17387
                                Andrew W. Coffman BPR 27160
                                rew@kingballow.com
                                dhanson@kingballow.com
                                acoffman@kingballow.com

                                1100 Union Street Plaza
                                315 Union Street
                                Suite 1100
                                Nashville, Tennessee 37201
                                Tel: (615) 259-3456
                                Fax: (615) 726-5417

                                Attorneys for Wyndham Vacation Resorts, Inc. & Wyndham Vacation Management

42

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to the following:

Andrea Taylor McKellar
Lyndsay Smith Hyde
MCKELLAR|HYDE, PLC
411 Broadway, Suite 302
Nashville, TN 37203
T: (615) 866-9828
F: (615) 866-9863

J. Patrick Stapleton
P. O. Box 4428
Sevierville, TN 37864
(865) 453-9792

David Karen
DK Law Group
300 Esplanade Drive, Suite 1180,
Oxnard, CA 93036

<u>/s/R. Douglas Hanson</u>